## GROHOSKY et al. v. RUSSELL et al.

### No. 5909.

Court of Civil Appeals of Texas. Amarillo.
Dec. 6, 1948.

Rehearing Denied Jan. 10, 1949.

Lasseter, Spruiell, Lowry, Potter & Lasater, of Tyler, William Wiggins, of Texarkana, and Marvin Miller, of New Boston, for appellants.

Lincoln, Kennedy & Glover, of Texarkana, for appellees.

PITTS, Chief Justice.

Appellants, Thomas M. Hubbard, Eugenia Hubbard Grohosky, and Alberta Hubbard Miller, heirs of James M. Hubbard, deceased, the latter two being married women joined by their husbands, respectively, filed suit against appellees, H. H. Russell and Loyd Wilson, for the recovery of certain bank stock or for damages in lieu thereof in a sum equal to its value. A trial was had to a jury which rendered a verdict favorable to appellees and judgment was rendered accordingly, from which an appeal was perfected to the Sixth Supreme Judicial District and the same was transferred to this Court by the Texas Supreme Court.

By reason of the nature of the case, a comprehensive statement of it should be here made. The record is quite lengthy but the statement will be made as briefly as the facts will justify. Appellants had two living brothers, namely, A. G. (Gus) Hubbard and R. M. (Bob) Hubbard, who were not parties to this suit. The mother of the said five children died and their father, James M. Hubbard, at an advanced age, married again. His second wife was much younger than he and she is known in the record before us either as Ella Lea Hubbard or as Ella Lea Hubbard McGee. James M. Hubbard had acquired a reasonably large estate during his lifetime, a part of which consisted at his death of 603¾ shares of stock in the First National Bank of New Boston, Texas. The record reveals that the said bank was operated with H. H. Russell as president and Loyd Wilson as vice president. On December 14, 1943 James M. Hubbard executed a will in which he willed and bequeathed the most of his estate, including 300 shares of his said bank stock, to his then wife, Ella Lea Hubbard, but a portion of his estate was left to each of his said children, all of whom were adults and were the only immediate survivors other than his said wife. A bequest of $1000 was made in the said will to C. F. Johnson, a Negro man who had worked for thirty years for James M. Hubbard, but because of the matters that later occurred Johnson never did get anything. On August 2, 1944 James M. Hubbard added a codicil to his will but it made no material changes in the original will other than to provide specifically that all his money left in any bank to his credit at the time of his death be given to his said wife after the payment therefrom of a few small bequests provided for in his will. In his will he named and appointed appellees together with J. P. Looney to serve as independent joint executors of his will but J. P. Looney was not made a party to this suit. On September 1, 1944 James M. Hubbard died leaving no other will. On September 5, 1944 his will with codicil attached

was offered for probate. The same was thereafter admitted to probate, the named executors were duly appointed, took the oath as such and had an inventory and appraisement and list of claims returned on October 28, 1944. The named executors were in the process of making distribution of the estate in accordance with the terms of the will when the said children of James M. Hubbard, deceased, filed suit on February 1, 1945 contesting the provisions of the will and praying that the order of the probate court admitting it to probate be set aside. The executors of the will and Ella Lea Hubbard McGee were named as party defendants in that suit. In the meantime Ella Lea Hubbard had married Harry McGee, who was likewise named as a party defendant by reason of his being the husband of Ella Lea Hubbard McGee. The said children of James M. Hubbard, deceased, employed an attorney who filed their said contested will suit and Ella Lea Hubbard McGee employed an attorney to represent her in the said suit, which suit was later settled without a trial. Both of the said attorneys testified as witnesses in the case now before us but neither of the said attorneys appeared as counsel in this case. According to the record counsel who first filed this case for appellants did not participate in the trial. Neither did counsel who briefed the case for appellants and presented it to us participate in the trial. Immediately after the contest was filed negotiations for settlement began between the said parties and their attorneys. A final settlement was reached and fully consummated on February 13, 1945 in which settlement Ella Lea Hubbard McGee, joined by her then husband Harry McGee and her attorney, accepted the sum of $18,500 payable in a check for her part of the estate and she, joined by her then husband, released to the said five children of James M. Hubbard, deceased, by deed duly executed by herself and her husband, all of her claims and rights to any part of the said estate. Appellants herein and Gus and Bob Hubbard approved the settlement as evidenced by their signatures shown on the said check. At the time of the settlement and just prior thereto the Hubbard estate had only $11,000 in money and it was necessary to raise an additional sum of $7,500 in order to make the cash settlement with Ella Lea Hubbard McGee. On February 12, 1945, the day the settlement was made and the day before it was consummated, appellees herein, acting as executors of the will in question, sold the 300 shares of the said bank stock that had been given to Ella Lea Hubbard under the terms of the will to A. L. Simms for $25 per share or a total of $7,500, which sum was applied to the $11,000 in cash on hand to make the full $18,500 needed to make the settlement. After the settlement was made Gus Hubbard approached appellee H. H. Russell to know if any of the bank stock had been sold. He was informed by Russell that 300 shares of such had been sold. According to the testimony of Gus Hubbard himself he abused the said H. H. Russell unmercifully by the use of vile epithets and called him a crook and a thief. He said he intended to hit Russell but Fred Newberry intervened. According to the said testimony of Hubbard such happened in the office of Hubbard's attorney and the excitement became so tense that his own attorney fainted and Fred Newberry got Hubbard out of the office. Hubbard further testified that he waited for Russell on the outside of the office for an hour; that Russell opened the door after he had been waiting for thirty minutes, saw him waiting and closed the door; that he opened the door again some thirty minutes later and saw Hubbard still waiting; that Russell finally sent word out to Hubbard by Fred Newberry to know what he wanted and Hubbard demanded that Russell sign a letter promising that the sale of the said 300 shares of stock would be recalled, the stock repurchased and be delivered to him (Gus Hubbard) at the Texarkana National Bank with a draft attached. Before leaving the office, Hubbard's attorney dictated such a letter for Russell to sign and thus make such a promise. Russell testified that Gus Hubbard's testimony about the episode in the office and the demand made upon him was true; that it was very unpleasant and that he "had to sign the letter" making the promise to repurchase the stock. Immediately thereafter appellees got A. L. Simms to transfer the said 300

shares of stock back to them under the circumstances at the same price Simms had paid them for it and they paid Simms for the repurchase of the stock out of their own individual money. Appellees immediately sent the said 300 shares of stock to the said Gus Hubbard through the said Texarkana National Bank with a draft for $7,500 attached. On February 14, 1945 the said draft, with certificate of the stock attached, was presented to the bank for payment. In the meantime R. M. Hubbard, a brother of Gus Hubbard, had protested to the said Texarkana Bank in writing the releasing of the said bank stock to Gus Hubbard. For some reason the stock was not delivered to Gus Hubbard and the draft was not paid but both were returned to appellees. On the next day, February 15, 1945, Gus Hubbard went to see H. H. Russell in the First National Bank of New Boston and appellees sold and transferred 60 shares of the said bank stock to Gus Hubbard for a consideration of $25 per share and Gus Hubbard paid appellees for the same.

In the settlement between the parties of the contested will case it was agreed that the order admitting the will of James M. Hubbard, deceased, to probate would be set aside. On February 27, 1945 the named executors made a full and complete report in writing to the probate court showing the condition of the estate of James M. Hubbard, deceased, at that time. The contestants of the said will appeared in the probate court on the said date for the purpose of having the former order admitting the will of their deceased father to probate set aside and the same was so done by order of the probate court. The said judgment of the probate court showed a partial distribution of the said estate by the executors therein named had been previously made as provided for under the terms of the will and their actions in such partial distribution were ratified and confirmed by the probate court and the executors were discharged from further liability as such and the judgment provided that they were discharged as independent executors without prejudice as a result of any of their transactions in making a partial distribu-

tion of the estate of James M. Hubbard, deceased.

Thereafter on March 7, 1945 all of the said children of James M. Hubbard, deceased, except Thomas Hubbard went to see appellees in their place of business and prevailed upon them to accept a power of attorney from all of them including Tom Hubbard and to continue the management of their deceased father's estate, completely wind it up and make distribution of it for them. Appellees reluctantly accepted such responsibility but the power of attorney was furnished and they wound up the said estate for the said children and made distribution of the proceeds therefrom to the said heirs without any complaint being made insofar as the record reflects. The record reveals that the said children of James M. Hubbard, deceased, profited in a sum not less than $25,000 as a result of the settlement made with Ella Lea Hubbard McGee and as a result of appellees winding up and distributing their estate for them.

On March 15, 1948 the parties went to trial in this suit on amended pleadings. The amended pleadings of appellants were filed on January 22, 1948. They alleged that all interest in their deceased father's estate formerly belonging to Gus Hubbard and R. M. Hubbard had been sold and transferred to one of appellants herein and the said two brothers were not therefore parties to this suit. Appellants sued appellees as individuals and asked for judgment against them jointly and severally as individuals. However, they alleged that some of appellees' acts were performed and committed as independent executors of the estate of James M. Hubbard, deceased. Appellants further alleged that appellees entered into an agreement and conspiracy with each other to defraud appellants out of the 300 shares of bank stock by a pretended sale of it to A. L. Simms and particularly were appellants trying to defraud them out of the remaining 240 shares of the said stock after they had sold 60 shares to Gus Hubbard. They further alleged that the sale of the stock to A. L. Simms was not necessary; that such was a simulated sale made for the purpose of having the said stock

transferred back to them by A. L. Simms; that appellees pretended as executors to sell and transfer the said stock to A. L. Simms who would soon transfer the same back to them by agreement and who a few days thereafter did transfer the said stock back to appellees as individuals; that such purported sales and transfers were void; that no title to the stock passed and the title to the same was never vested in A. L. Simms or in appellees but the title to said stock was vested in appellants as heirs of James M. Hubbard, deceased. Appellants further alleged that if they failed to establish such fraud as they had alleged, that the provisions of Article 3579, Revised Civil Statutes, make appellees' transactions with A. L. Simms void and that in such event no title passed to A. L. Simms or to appellees but that the title to the said bank stock was vested in the estate of James M. Hubbard, deceased, and was being held in trust by appellees for appellants. Appellants prayed for recovery of the said bank stock and its earnings or for a sum equal to the value of such.

Upon the theories pleaded and presented by the evidence, the trial court submitted the controlling issues to the jury which found that the sale of the 300 shares of bank stock was necessary in order to raise sufficient funds to consummate the settlement between appellants and Ella Lea Hubbard McGee; that appellees used ordinary care to secure the best price obtainable for the stock sold to A. L. Simms; that there was no understanding between appellees and A. L. Simms that the stock would be sold to A. L. Simms who would resell the stock to appellees; that the fair market value of the stock at the time it was sold to A. L. Simms was $25 per share; that appellants acquiesced in and ratified the sale of the bank stock to A. L. Simms and that appellants received a financial benefit as a result of the settlement made with Ella Lea Hubbard McGee. The trial court sustained appellees' motion for judgment on April 5, 1948 and judgment was accordingly rendered upon the verdict of the jury.

The jury made two further findings that were not inconsistent with its former findings heretofore stated but we think the latter findings are wholly immaterial. They were, in effect, that appellants did not know at the time they executed a power of attorney to appellees on March 7, 1945 that appellees had become the owners of some of the bank stock in controversy and that they did not acquiesce in or ratify such a purchase of stock by appellees. We think such findings are immaterial since the jury had previously found that appellants knew and acquiesced in the sale of the stock to A. L. Simms. They therefore parted with any claim of title they may have had to the said stock when it was sold to A. L. Simms on February 12, 1945 and they got the benefit of the proceeds of the sale thereafter in their settlement with Ella Lea Hubbard McGee. Certainly the brother of appellants, Gus Hubbard, who joined appellants in getting appellees to accept the power of attorney to settle and distribute their estate, knew appellees had repurchased the said bank stock from A. L. Simms and he must have acquiesced therein. According to Gus Hubbard's own testimony, such stock was repurchased from Simms by appellees nearly a month prior to March 7, 1945 as a result of the conduct of said Gus Hubbard and his personal abuse of appellee H. H. Russell, which almost amounted to force and duress, if it did not amount to such.

Appellants do not challenge any of the jury's findings or complain about them. They predicate their appeal upon one point of error complaining because of the refusal of the trial court to submit to the jury their Special Requested Issue No. 5 inquiring if appellees purchased the bank stock in question for the benefit of the Hubbard estate.

It is our opinion that the Special Requested Issue was properly refused by the trial court for the reason that the pleadings and evidence did not support such an issue. The pleadings of appellants and the theory upon which they tried the case were that appellees tried to procure title to the stock either as a result of a conspiracy that amounted to fraud or in violation of the provisions of Article 3579, which makes the purchase of any part of an estate by an executor void, in either event appellants

claimed the stock was being held in trust for them. The controlling issues made by the pleadings and the evidence were submitted to the jury and answered against appellants. The undisputed evidence shows that appellees purchased the stock from A. L. Simms with their own money. It is true that they offered to sell all of the 300 shares of stock to Gus Hubbard for the sake of harmony and in order to get along with him after he abused H. H. Russell and they did finally sell him 60 shares of the stock. They may have sold some of the stock to the other heirs for the sake of harmony if they had been as abusive and disagreeable as Gus Hubbard had been but there was no evidence and certainly none of any probative force that appellees had purchased the said stock for the benefit of the Hubbard estate.

By the terms of the will, title to the 300 shares of bank stock was vested in Ella Lea Hubbard when James M. Hubbard died. It certainly became a part of her estate when the executors qualified as such and thereafter set it aside as a part of her estate. Certainly the Hubbard estate had no interest whatever in the bank stock after it was sold to A. L. Simms in order to effect a settlement between the parties. Then most certainly the said estate and none of the heirs had any interest in the said bank stock or any claim thereto when it was thereafter sold by A. L. Simms back to appellees. There was no kind of fiduciary relationship at the time appellees bought the stock from Simms that made them trustees of the said stock for the benefit of the appellants.

It is our opinion that appellants' Special Requested Issue calls for a conclusion of law and is not an issue calling for a fact answer. Whether or not appellees bought the stock from A. L. Simms for the use and benefit of the Hubbard estate and ultimately for the use and benefit of appellants, would have to be answered from specific facts pleaded and proved. No such facts were pleaded and proved. Appellants relied on their pleadings to the effect that the purported sale was either fictitious and fraudulently made or else it was void by reason of the provisions of the statute.

For the reasons stated appellants' point of error is overruled and the judgment of the trial court is affirmed.